1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM & WATKINS LLP
Leslie R. Caldwell (CA Bar No. 302700)
 leslie.caldwell@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095

*Attorney for Defendant*
*United Microelectronics Corporation*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED MICROELECTRONICS CORPORATION; FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.; and CHEN ZHENGKUN, a.k.a. STEPHEN CHEN,<br><br>                    Defendants. | CASE NO. 3:18-CV-06643 MMC<br><br>**DEFENDANT UNITED MICROELECTRONICS CORPORATION'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDING PENDING RESOLUTION OF CRIMINAL PROCEEDING**<br><br>Date: March 29, 2019<br>Time: 9:00 a.m.<br>Judge: Maxine M. Chesney<br>Location: Courtroom 7 – 19th Floor |

1   **NOTICE OF MOTION AND MOTION**

2   **TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

3       PLEASE TAKE NOTICE that on March 29, 2019, at 9:00 a.m., or as soon thereafter as

4   the matter can be heard in Courtroom 7 of the United States District Court for the Northern District

5   of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant UNITED

6   MICROELECTRONICS CORPORATION ("UMC") will move this Court for an order staying

7   the above-titled action pending resolution of the parallel criminal case and investigation by the

8   United States Attorneys' Office for the Northern District of California.

9       As explained more fully in the Memorandum of Points and Authorities to follow, a stay of

10  this action is necessary to afford UMC an adequate defense in the civil case and to avoid

11  prejudicing UMC in the criminal proceeding.

12      UMC's motion will be based on this Notice of Motion and Motion to Stay Proceeding

13  Pending Resolution of Criminal Proceeding ("Motion to Stay"), the following Memorandum of

14  Points and Authorities, the accompanying Declaration of Leslie R. Caldwell, and any other oral

15  and documentary evidence that may be presented at the hearing on this Motion to Stay.

16

17  DATED: February 20, 2019

18                       By:   /s/ _____
                                  Leslie R. Caldwell

19

20                       LATHAM & WATKINS LLP
                         *Attorney for Defendant*
                         *United Microelectronics Corporation*

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS & AUTHORITIES</u>

### I.    STATEMENT OF ISSUE

Defendant UMC requests that this court exercise its discretion to stay this civil action pending resolution of the parallel criminal case brought by the United States Attorneys' Office for the Northern District of California, *United States of America v. United Microelectronics Corporation, et al.*, Criminal Case No. 18-465 MMC.  A stay is in the interests of justice, and, as explained   below, the relevant factors weigh in favor of granting a stay.  As noted in the accompanying Declaration of Leslie R. Caldwell, the government has indicated that it does not object to a stay.

### II.    LEGAL STANDARD

This court has authority to order a stay of parallel proceedings.  *See Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, No. CIV. 2:09-cv-0954 FCD EFB, 2009 WL 2136986, at *1 (E.D. Cal. July 15, 2009) (recognizing a court's "inherent power to control its own docket and calendar").  A court may stay a civil proceeding in the interests of justice.  *See Jones v. Conte*, No. C 045312S1, 2005 WL 1287017, at *1 (N.D. Cal. Apr. 19, 2005).

Whether to stay civil proceedings where there is a parallel criminal case "should be determined based on the circumstances and competing interests involved in the case." *Id.*  Courts deciding whether to grant a stay should weigh the following factors: "1) the extent to which the defendant's Fifth Amendment rights are implicated; 2) the interest of the plaintiff in proceeding with the litigation and the potential prejudice to plaintiff of a delay; 3) the convenience of the court and the efficient use of judicial resources; 4) the interests of third parties; and 5) the interests of the public." *Id.*

### III.    DISCUSSION

UMC is a Taiwanese semiconductor foundry company that produces dynamic random-access memory (DRAM) technology, a type of memory device used in electronics products. Caldwell Decl. Ex. 1 at ¶¶ 1, 4.  On September 27, 2018, the United States indicted UMC and four other defendants—Fujian Jinhua Integrated Circuit, Co., Ltd. ("Jinhua"); Chen Zhengkun, a.k.a. Stephen Chen ("Chen"); He Jianting, a.k.a. J.T. Ho ("Ho"); and Wang Yungming, a.k.a. Kenny

1

1   Wang ("Wang")—on charges of violating and conspiring to violate provisions of the Economic

2   Espionage Act, 18 U.S.C. §§ 1831 and 1832. *Id.* at ¶¶ 17, 51, 63.

3       On November 1, 2018, the United States filed a civil complaint for injunctive relief against

4   UMC, Jinhua, and Chen in the District Court for the Northern District of California, initiating the

5   instant case. *See* Compl. The government brought this action under 18 U.S.C. § 1836(a), which

6   authorizes the Attorney General to seek injunctive relief to prevent violations of 18 U.S.C. §§ 1831

7   and 1832, the same provisions defendants are accused of violating in the government's criminal

8   case. *See* Compl. ¶ 6. The facts alleged as the basis for the government's civil case are the same

9   as those underlying the criminal case; indeed, the civil complaint explicitly references the facts

10  "[a]s set forth in the Indictment." *See, e.g.*, Compl. ¶¶ 3, 5, 10. Although the civil suit does not

11  name Ho and Wang as defendants or mention them by name in the complaint, the government

12  describes their conduct as that of "Employee 1" and "Employee 2." *See, e.g.*, Compl. ¶¶ 22–26.

13      Given the similarities between the indictment and civil complaint, all of the relevant factors

14  militate in favor of granting a motion to stay. Furthermore, on January 11, 2019, the government

15  attorney handling this civil action represented that, although the government was unwilling to

16  participate in a joint stipulation to stay the civil proceeding until resolution of the criminal case, it

17  would not oppose a duly noticed motion by UMC to obtain the same relief. Caldwell Decl. ¶ 2.

18      **A.    Considering the Extent to Which Fifth Amendment Rights Are Implicated**

19          **Weighs In Favor of a Stay**

20       "[T]he strongest case for deferring civil proceedings until after completion of criminal

21  proceedings is where a party under indictment for a serious offense is required to defend a civil or

22  administrative action involving the same matter." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*,

23  628 F.2d 1368, 1375–76 (D.C. Cir. 1980). This is typically true because criminal and civil

24  proceedings arising out of the same matter present a "concern that allowing the civil action to

25  proceed may undermine the defendant's Fifth Amendment privilege against self-incrimination,

26  result in discovery beyond the scope of what the Federal Rules of Criminal Procedure allow,

27  expose the defense strategy, or otherwise cause prejudice." *Square 1 Bank v. Lo*, No. 12-cv-05595-

28  JSC, 2014 WL 7206874, at *1 (N.D. Cal. Dec. 17, 2014).

2

While UMC recognizes that corporate defendants do not have a Fifth Amendment right against self-incrimination, this factor still is highly relevant.  First, an individual defendant litigating both civil and criminal suits arising from the same or similar conduct faces the difficult choice whether to invoke his Fifth Amendment privilege in the civil matter and risk an adverse inference from the failure to speak, or waive that right and risk that the information obtained through civil discovery will be used against him in the criminal case.  *See Volmar Distribs., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39–40 (S.D.N.Y. 1993).  Courts have recognized the importance of this factor to corporate defendants where "the individual defendants are the persons most knowledgeable and the persons whom the corporation would designate to testify on its behalf." *See Medina v. Argent Mortg. Co.*, No. 05-CV-2905 RS, 2006 WL 1305230, at *1–2 (N.D. Cal. May 11, 2006) (granting stay of civil proceeding where alleged employees of civil corporate defendant faced pending criminal action implicating their Fifth Amendment rights); *Taylor*, 2009 WL 2136986, at *3 (granting stay of civil case where both civil and criminal cases arose out of the same course of conduct and finding that "the Fifth Amendment rights of every director or officer who may speak on behalf of [the company] are implicated, and thus, [the company] is likely to be greatly prejudiced in it[s] ability to meaningfully defend itself in the civil matter").

Here, UMC has been indicted in the United States along with three current or former employees.  The Taiwan authorities also have separately indicted two of the three individuals indicted here, as well as one other UMC employee, in a case arising from the exact same facts. *See* Caldwell Decl. Exs. 2–3.  Should the government succeed in obtaining discovery from any of those individuals in its civil case, they may invoke their Fifth Amendment rights, thereby compromising UMC's ability to mount an adequate defense.  Alternatively, if they opted to testify, their statements could be offered against UMC by the government in the criminal case, as party admissions under Fed. R. Evid. 801(2)(A) or 2(D).  Either outcome would be prejudicial to UMC.

There is also considerable risk that the broader scope of civil discovery will impair the integrity of a parallel criminal proceeding and prejudice the defendant. *See Fed. Ins. Co. v. Laney*, No. C 12-04708 WHA, 2013 WL 594267, at *3 (N.D. Cal. Feb. 14, 2013) ("[At] least some disclosures provided in the civil proceedings will be relevant to the issues in the criminal

3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    proceedings.  Allowing the civil proceedings to continue will permit the government to gain access

2    to discovery that it would otherwise not have under the federal rules of criminal procedure, such

3    as documents derived from initial disclosures, defendants' responses to interrogatories, pleadings

4    and admissions at any depositions."); *Square 1 Bank*, 2014 WL 7206874, at *2 (observing "it is

5    possible that any information [the defendant] produces to fulfill his civil discovery obligations—

6    in particular, requests for admissions and deposition testimony—may be used against him in his

7    criminal case").  The risk of prejudice is especially great for a corporate defendant like UMC, since

8    statements made by employees or other UMC representatives during discovery could be offered

9    against UMC in the criminal case.

10         Courts have recognized that the risk to a defendant in parallel civil and criminal cases is

11   heightened where both proceedings are brought by the government.  *Cf. Square 1 Bank*, 2014 WL

12   7206874, at *2 (explaining that where the civil case is brought by a private plaintiff, the risk of

13   prejudice from collaboration between the plaintiffs in civil and criminal cases is lower than if both

14   cases involved the government).

15         The status of a parallel criminal proceeding also is important when considering whether to

16   stay a civil case.  *See eBay, Inc. v. Dig. Point Sols., Inc.*, No. C 08-4052 JF (PVT), 2010 WL

17   702463, at *3–4 (N.D. Cal. Feb. 25, 2010).  In *eBay*, the court denied a motion to stay where no

18   indictment had been issued and the government was unwilling to provide further information on

19   potential criminal charges stemming from its investigation.  *Id.* at *1.  Even though the "timing

20   and scope of the potential criminal charges" was unknown, the court noted that the defendants still

21   had "significant, though not overwhelming" Fifth Amendment interests.  *Id.* at *4.  Here, unlike

22   in *eBay*, UMC has already been indicted and the risk of prejudice is imminent and clear.

23         Allowing the civil case to proceed also risks exposing a defendant's strategy in the criminal

24   case.  *See Taylor*, 2009 WL 2136986, at *2 (noting that, given the overlap of the course of conduct

25   at issue in both cases, "the pending civil litigation may . . . create unnecessary complexities with

26   respect to discovery, expose defendants' strategy or theories with respect to the criminal case, or

27   otherwise prejudice the pending criminal proceedings").

28

The civil and criminal cases against UMC involve identical alleged facts—the civil complaint refers explicitly to the facts as set forth in the criminal indictment—as well as the same cast of critical players: UMC, Jinhua, Chen, Ho, and Wang.  All five defendants face criminal charges, and while only three are defendants in the civil case, the two non-defendants in the civil case are nevertheless identified by the government as key actors in the course of conduct alleged in the Complaint.  Civil discovery regarding the facts common to both cases would necessarily require information-gathering from the three individuals formerly employed by Micron-related entities, at least two of whom, the Complaint alleges, brought Micron trade secrets to UMC and used them to develop DRAM technology.  Compl. ¶¶ 21–26.  If any of these individuals were to invoke their Fifth Amendment rights during civil discovery, UMC would be deprived of critical information in its defense, and could suffer adverse consequences in the form of an adverse inference in the civil case.  *See Volmar*, 152 F.R.D. at 41 (granting stay of civil proceeding where corporate defendants alleged they would be unable to offer an adequate defense without the testimony of individual who exercised control over two corporate defendants and would be the corporate representative most likely to be deposed).  Relatedly, if the civil case were to proceed in tandem with the criminal case, the more liberal obligations under civil discovery rules could force UMC and key individuals to produce materials that would expose facts none of the parties would otherwise be required to turn over in the criminal case.  Because the United States is the plaintiff in both the civil and criminal cases, UMC faces a heightened risk of prejudice from potential collaboration between the civil and criminal prosecutors.  All of these considerations weigh heavily in favor of granting a stay of this action pending resolution of the criminal proceeding.

**B.  A Stay Would Serve The Court's Interest in Judicial Efficiency and Minimize the Burden on Defendant UMC**

Staying this case would advance the court's interest in efficiency.  A stay of civil proceedings until after the criminal case is resolved "makes efficient use of judicial resources by 'insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination.'"  *Jones*, 2005 WL 1287017, at *2 (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)).  Resuming a civil case only

5

1   after the criminal case has come to a conclusion may promote more streamlined civil discovery

2   and swifter resolution of the civil case.  *See Volmar*, 152 F.R.D. at 42 (noting that "the outcome

3   of the criminal case may encourage settlement"); *Wroth v. City of Rohnert Park,* No. 17-cv-05339-

4   JST, 2018 WL 888466, at *3 (N.D. Cal. Feb. 14, 2018) (observing that "[t]he resolution of the

5   criminal matter may narrow the scope of civil discovery").

6          A stay is particularly appropriate for purposes of advancing judicial efficiency where, as

7   here, the case is in its very early stages.  *See Taylor*, 2009 WL 2136986, at *4 (granting motion to

8   stay where the case was "in the early stages of litigation," where no answer or dispositive motions

9   had been filed and the court had not issued a scheduling order); *Medina*, 2006 WL 1305230, at *2

10  ("As discovery has not yet begun in this case, only the initial pleadings have been filed, and no

11  dispositive motions have yet been presented, the efficient use of judicial resources favors a stay in

12  this action.").

13         This case is in its early stages: UMC has not yet filed an answer or motion under Federal

14  Rule of Civil Procedure 12 and no discovery has issued.  In fact, neither of the two other parties to

15  the civil action—Chen and Jinhua—has yet made an appearance in this case.  *See* Caldwell Decl.

16  ¶ 3.  The nearly complete overlap in the course of conduct underlying the criminal charges and

17  civil allegations makes it highly likely that issues of fact resolved in the criminal case will bear

18  directly on UMC's civil liability and allow the civil case to be resolved more quickly.

19  Additionally, UMC's own burden in litigating parallel cases regarding the same conduct and

20  navigating the complexities of civil discovery in that context would be greatly alleviated by

21  allowing the cases to proceed sequentially rather than simultaneously.

22         **C.     The Government Faces No Prejudice From a Delay in the Litigation and Its
               Interest in Proceeding Expeditiously is Minimal**

23

24         The government's core interests will not be impaired from a stay of the civil proceeding

25  pending resolution of the parallel criminal case.   The government's civil complaint seeks

26  injunctive relief to prohibit UMC, Jinhua, and Chen from "using or conveying Micron's trade

27  secrets."  Compl. ¶ 44.  Because the United States Department of Commerce has placed Jinhua on

28  the Entity List under the Export Administration Regulations ("EAR") as of October 30, 2018, any

6

1  exports or transfers to Jinhua of technology subject to the EAR require a license.  *See* 15 C.F.R. §

2  744.16(a); 15 C.F.R. pt. 744, Supp. No. 4 (Jan. 23, 2019); *see also* Export Administration

3  Regulations, 83 Fed. Reg. 54,519, 54,521 (Oct. 30, 2018) (codified at 15 C.F.R. pt. 744) (noticing

4  the addition of Jinhua to the Entity List).  Moreover, per the terms of Jinhua's entry on the Entity

5  List, license applications for exports or transfers to Jinhua carry a presumption of denial.  Export

6  Administration Regulations, 83 Fed. Reg. at 54,521.  Therefore, since October 30, 2018, UMC has

7  been, and is, effectively prohibited from transferring DRAM technology to Jinhua.  So long as the

8  Entity List designation remains in place, there is no basis or need for the injunctive relief sought

9  by the government's Complaint, and the government will not be prejudiced by a stay.

10     Additionally, the government has represented to UMC that it does not oppose UMC's

11  motion to stay this civil action pending the outcome of the criminal case.  *See* Caldwell Decl. ¶ 2.

12     **D.     Other Factors Favor Granting a Stay**

13     The public's interest in ensuring the integrity of the criminal case counsels in favor of

14  issuing a stay to ensure that discovery from the civil case is not used to circumvent the greater

15  limitations on discovery in the criminal proceeding.  *See Wroth*, 2018 WL 888466, at *3 (noting

16  the public's "interest in ensuring that the criminal process is not subverted by ongoing civil cases"

17  (quoting *Douglas v. United States*, No. C 03-04518 JW, 2006 WL 2038375, at *6 (N.D. Cal. July

18  17, 2006))).  Here, the public has an interest in ensuring the integrity of the criminal prosecution

19  of UMC and other defendants.  Because the government has brought both the civil and criminal

20  cases, there is a significant risk of compromise.  Additionally, any continuing third party interest

21  on behalf of Micron is adequately protected by Jinhua's placement on the Entity List, such that it

22  will not be prejudiced by the stay.

23  //
24  //
25  //
26  //
27  //
28  //

7

1  **IV.     CONCLUSION**

2           For the reasons set forth above, UMC respectfully requests that the Court stay this action

3  pending resolution of the parallel criminal proceeding.

4

5  DATED: February 20, 2019

6                                                      By:   ___/s/_____
                                                            Leslie R. Caldwell

7

8                                                      LATHAM & WATKINS LLP
                                                       *Attorney for Defendant*
9                                                      *United Microelectronics Corporation*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UMC'S MOTION TO STAY PROCEEDING
CASE NO. 3:18-CV-06643 MMC